# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| QUAN VU and MAY SIEW, | : | 1:16-cv-2170 |
|---|---|---|
| Plaintiffs, | : | |
| v. | : | Hon. John E. Jones III |
| SKI LIBERTY OPERATING CORP., *et. al.*, | : | |
| Defendants, | : | |

## **MEMORANDUM**

### March 26, 2018

Plaintiffs are Quan Vu and his wife, May Siew. ("Plaintiffs"). Defendants are Ski Liberty Operating Corp. and Snow Time, Inc., operating as Liberty Mountain Resort. ("Defendants"). This action arises out of a skiing accident at Liberty Mountain that left Mr. Vu severely injured. The complaint brings one count of negligence on behalf of Mr. Vu and one count of loss of consortium on behalf of Mrs. Siew, both alleging that the accident was caused by the Defendants' negligence in maintaining the ski slope and failing to warn Mr. Vu of the slope's hazardous condition. (Doc. 1). Presently pending before the Court is the Defendants' motion for summary judgment. (the "Motion") (Doc. 36). The Motion has been fully briefed and is therefore ripe for our review. (Docs. 38, 42, 43). For the reasons that follow, the Motion shall be granted.

1

## I. BACKGROUND

On January 23, 2015, Mr. Vu was downhill skiing with his daughter at Liberty Mountain. (Doc. 41, ¶ 24). Mr. Vu was following his daughter from behind as they skied down the Lover Heavenly trail, a blue square intermediate hill, when he had his accident. (*Id.* at ¶¶ 24-25). Due to his injuries, Mr. Vu does not recall much detail about his accident. (Doc. 37, ¶ 11). Mr. Vu testified: "I believe there was a snowboarder involved and I – the snowboarder got – either cut me off or got awfully close and I had a knee-jerk reaction to veer because the last thing I want to do is ram into somebody. So I – my knee-jerk reaction is to veer." (Doc. 37, att. 1, pp. 65-66). However, Mr. Vu could not recall what he saw that caused him to veer, whether he veered to the right or to the left, or whether the snowboarder was above or below him on the hill. (*Id.* at pp. 65-66). The last thing that Mr. Vu remembered was skiing with his daughter. (*Id.* at p. 66).

Mr. Vu's daughter testified: "I saw someone get really close to him and he was trying to avoid them and it was either ramming into him, the snowboarder, or person who was trying to get really close to him, or veering off path." (Doc. 42, att. 2, p. 8). "He – there was someone trying to kind of get really close to him. And he didn't want to ram into him. So he – I don't really understand – know what happened. But he tried to avoid it. And there was like a big ditch or something there. And he tried to stop and tried to avoid the person who was trying to cut him

off." (*Id.*). "My dad was – the snowboarder was – my dad was kind of like the ham in the middle of a sandwich. Between the end of the trail, the edge of the trail and the snowboarder." (*Id.* at p. 9). "I just felt that the snowboarder was getting quite close to my dad and I didn't want a collision to happen or the snowboarder to ram into my dad." (*Id.* at p. 10).

Ultimately, whether he did so intentionally or not, Mr. Vu skied off of the edge of the trail and suffered catastrophic injuries. There was a drop-off at the edge of the ski trail of about three to four feet. (Doc. 41, ¶ 32). Below that drop-off was a large pile of rocks. (*Id.* at ¶ 31). Mr. Vu skied off of the edge of the trail, off of the embankment, and landed on the pile of rocks. (Doc. 37, ¶ 11).

Mr. Vu was an experienced skier at the time of his accident. He had skied for over twenty years and was capable of skiing black diamond slopes. (*Id.* at ¶ 6). Mr. Vu testified that he was familiar with the Skier's Responsibility Code and understood that he was responsible for skiing in control and in such a manner that he could stop or avoid other skiers. (*Id.*). Mr. Vu also testified that he understood that skiing is a dangerous sport and that he could get hurt if he skied out of control or if he fell. (*Id.*).

On the day of his accident, Mr. Vu's wife purchased his Liberty Mountain Resort Lift Ticket. (*Id.* at ¶ 18). The back of the lift ticket reads as follows:

> **PLEASE READ**
> Acceptance of this ticket constitutes a contract. The conditions of the contract are stated on this ticket & will prevent or restrict your ability to sue Liberty Mountain Resort. If you do not agree with these conditions, then do not use the facility. Snowsports in their various forms, including the use of lifts, are dangerous sports with inherent and other risks. These risks include but are not limited to: variations in snow, steepness & terrain, ice & icy conditions, moguls, rocks, trees & other forms of forest growth or debris (above or below the surface), bare spots, lift towers, utility lines & poles, fencing or lack of fencing, snowmaking & snowgrooming equipment & component parts, on-snow vehicles & other forms of natural or man-made obstacles, and terrain features on or off designated trails as well as collisions with equipment, obstacles or other snowsport participants. Trail conditions vary constantly because of weather changes and use. All the inherent and other risks involved present the risk of permanent catastrophic injury or death. In consideration of using Liberty's facilities, **the purchaser or user of this ticket agrees to accept the risks of snowsports and understands and agrees that they are hazardous and further agrees NOT TO SUE Ski Liberty Operating Corp., its owners or employees if injured while using the facilities regardless of any negligence, including gross negligence, on the part of the resort, and/or its employees or agents.** The purchaser or user of this ticket voluntarily assumes the risk of injury while participating in the sport, and agrees to report all injuries before leaving the resort . . .

(Doc. 37, Ex. D) (emphasis in original). Though Mr. Vu was uncertain if he read the language on the lift ticket on the day of his accident, he testified that he had read it at some point prior to his accident. (Doc. 37, ¶ 20). At his deposition, Mr. Vu was asked to read portions of the lift ticket and he had trouble doing so because the font was too small. (Doc. 37, att. 1, p. 70).

Mr. Vu and his wife initiated this action with the filing of a complaint on October 27, 2016. (Doc. 1). Plaintiffs allege that Defendants were negligent in the

4

design, construction, and maintenance of the ski slope, failure to warn Mr. Vu of the dangerous condition, failure to construct a barrier to stop skiers from going over the edge into the pile of rocks, failure to inspect the scope and detect the defective condition, and failure to repair that condition. Defendants filed the instant motion for summary judgment on January 31, 2018. (Doc. 36).

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-

5

movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

### III. DISCUSSION

Defendants move for summary judgment on two legal bases. First, Defendants argue that Plaintiffs' claims are barred as a matter of law because Mr. Vu's injuries were caused by an inherent risk of skiing. Second, Defendants argue that Plaintiffs' claims are barred by the exculpatory release language contained on

the Liberty Mountain lift ticket. Because we find that Mr. Vu's injuries arose out of risks inherent to the sport of downhill skiing, we hold that Defendants are entitled to summary judgment as a matter of law without even considering the exculpatory release language of the lift ticket.

The material facts surrounding Mr. Vu's accident are not in dispute. Though Mr. Vu and his daughter are unclear on the specifics, it is undisputed that Mr. Vu ended up skiing off of the trail, over a drop-off, and into a pile of rocks. (Doc. 37, ¶ 11). Mr. Vu testified that a snowboarder was getting too close to him and his "knee-jerk" reaction was to veer to avoid a collision, causing him to ski off of the trail and over the embankment. (Doc. 37, att. 1, pp. 65-66). Mr. Vu's daughter also testified that her father's accident occurred when he tried to avoid a collision with a snowboarder. (Doc. 42, att. 2, p. 8). While Defendants argumentatively refer to this person as the "phantom snowboarder" and question the credibility of the testimony, for purposes of this Motion we can take Plaintiffs' facts as true and assume that Mr. Vu skied off of the trail, either intentionally or as a result of a knee-jerk reaction, to avoid colliding with a snowboarder. Even so, summary judgment must be granted in favor of the Defendants because Mr. Vu's accident occurred as a result of inherent risks of downhill skiing.

The Pennsylvania General Assembly expressly preserved the doctrine of assumption of the risk as a defense in downhill skiing cases in the Skier's

7

Responsibility Act, recognizing that "there are inherent risks in the sport of downhill skiing." 42 Pa. C.S. § 7102(c). As the Supreme Court of Pennsylvania explained, "[t]he assumption of the risk defense, as applied to sports and places of amusement, has also been described as a 'no-duty' rule, i.e., as the principle that an owner or operator of a place of amusement has no duty to protect the user from any hazards inherent in the activity." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1186 (2010) (*citing* Restatement (Second) of Torts, § 496A, cmt. C, 2). "Where there is no duty, there can be no negligence, and thus when inherent risks are involved, negligence principles are irrelevant—the Comparative Negligence Act is inapplicable—and there can be no recovery based on allegations of negligence." *Id*.

In *Hughes v. Seven Springs Farm, Inc.*, the Supreme Court of Pennsylvania established a two-part test for courts to use to determine whether a plaintiff's claims are barred by the no duty rule of the Skier's Responsibility Act. 762 A.2d 339, 343 (2000). "First, this Court must determine whether [the plaintiff] was engaged in the sport of downhill skiing at the time of her injury." *Id*. at 344. "If that answer is affirmative, we must then determine whether the risk" of the circumstance that caused the plaintiff's injury "is one of the 'inherent risks' of downhill skiing." *Id*. If so, then summary judgment must be awarded against the plaintiff as a matter of law. *Id*.

8

In the case at-bar, there can be no dispute that Mr. Vu was engaged in the sport of downhill skiing at the time of his accident. The salient question, therefore, becomes whether veering off-trail and over a drop-off into a pile of rocks to avoid a collision with a snowboarder are inherent risks of downhill skiing. If those risks are inherent to skiing, then Defendants had no duty to protect Mr. Vu. *Chepkevich*, 2 A.3d at 1186. If those risks are not inherent, traditional principles of negligence apply and we must determine what duty the Defendants owed Mr. Vu, whether the Defendants breached that duty, and whether the breach caused Mr. Vu's injuries.

We begin with a discussion of what it means for a risk to be "inherent." The *Hughes* court explained that "inherent" risks are those that are "common, frequent, and expected" in downhill skiing. *Id*. In interpreting risks, the Supreme Court of Pennsylvania has instructed that "the clear legislative intent to preserve the assumption of the risk doctrine in this particular area, as well as the broad wording of the Act itself, dictates a practical and logical interpretation of what risks are inherent to the sport." *Chepkevich*, 2 A.3d at 1187-88. "Accordingly, courts have rejected attempts by plaintiffs to define the injury producing risks in very a specific and narrow manner." *Cole v. Camelback Mountain Ski Resort*, 2017 WL 4621786, at *4 (M.D. Pa. Oct. 16, 2017) (Mariani, J.). For example, the Supreme Court of Pennsylvania in *Chepkevich* rejected the plaintiff's argument that she did not assume the "specific risk" involved, looking instead to the "general risk" that gave

9

rise to the accident. 2 A.3d at 1188. A number of courts have addressed the scope of the Skier's Responsibility Act and have concluded that some of the inherent risks of downhill skiing include: lack of netting, improper course plotting, or soft snow[1]; skiing off trail and striking a tree[2]; collisions with unpadded snow equipment poles[3]; striking a fence on the edge of the trail[4]; and collisions with other skiers or snowboarders.[5]

Before addressing the risks that Mr. Vu encountered, we must address Plaintiffs' initial argument that the assumption of the risk doctrine is inapplicable. Plaintiffs argue that while Mr. Vu "was *generally* aware of the dangers of downhill skiing," he was not aware "of the specific hazard of being ejected from the ski trail due to a steep 3 to 4 foot drop-off on that particular slope's trail edge." (Doc. 42, p. 8) (emphasis in original). Because there is no evidence that Mr. Vu had subjective awareness of these risks, Plaintiffs argue, the doctrine of assumption of the risk cannot apply. (*Id.* at pp. 9-13). For support of this argument, Plaintiffs cite several cases that are materially distinct from the case at-bar. First, Plaintiffs quote *Barillari v. Ski Shawnee, Inc.*, "[i]t is not enough that the plaintiff was *generally* aware that the activity in which he was engaged had accompanying risks." 986 F. Supp. 2d 555, 563 (M.D. Pa. 2013). Importantly, the court made this statement

---

[1] *Bjorgung v. Whitetail Resort, L.P.*, 550 F.3d 263 (3d Cir. 2008).
[2] *Id.*
[3] *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (3d Cir. 1983).
[4] *Cole*, 2017 WL 4621786, at *5.
[5] *Hughes*, 762 A.2d 339.

when analyzing the doctrine of voluntary assumption of the risk *after* determining that the Skier's Responsibility Act was not applicable because the plaintiff was not engaged in the sport of downhill skiing at the time of the accident. *Id*. at 561. The instruction of this quote is inapplicable to our consideration of the no duty doctrine of assumption of the risk.

Next, Plaintiffs rely heavily on *Bolyard v. Wallenpaupack Lake Estates*, Inc., 2012 WL 629391(M.D. Pa. Feb. 27, 2012) (Caputo, J.). In *Bolyard*, the plaintiff sued the defendant for negligence after sustaining injuries while snow tubing on the defendant's property. *Id*. at *1. The court recognized that while the plaintiff had "*general* knowledge" of the dangers of snow tubing on the hill, she did not assume the risk because "there is no evidence in the record that she had any knowledge of the specific hazards of that particular slope." *Id*. at *6. Plaintiffs argue that "[s]imilar to the patron in Bolyard," Mr. Vu was only *generally* aware of the risks he could suffer while skiing and thus assumption of the risk is inapplicable. (Doc. 42, p. 8). We disagree.

Notably, the slope in *Bolyard* was an old slope that was not currently in operation. 2012 WL 629391, at *1. The court used principles of negligence as applicable to landowners and licensees to determine the duty owed to the plaintiff and, consequently, considered the doctrine of voluntary assumption of the risk as a defense. *Id*. at **3-6. Analyzing the present action under the no duty rule, we do

11

not consider the defense of voluntary assumption of the risk; instead, we must determine whether Mr. Vu's injuries arose out of an inherent risk of the sport of skiing such that the Defendants had no duty at all. Pursuant to *Hughes* and the Skier's Responsibility Act, there is no duty to protect a skier from the inherent risks of skiing and therefore, "when inherent risks are involved, negligence principles are irrelevant." *Id*.

Finally, Plaintiffs cite *Perez v. Great Wolf Lodge of the Poconos LLC*,[6] *Staub v. Toy Factory, Inc.*,[7] *Jones v. Three Rivers Mgmt. Corp*,[8] and *Telega v. Sec. Bureau, Inc*.[9] in support of their position that assumption of the risk does not apply because Mr. Vu did not appreciate the specific risks that caused his accident. To start, none of these cases address the Skier's Responsibility Act. These cases discuss appreciation of specific risk only after determining that the no duty rule was inapplicable because the risk encountered was not inherent. Again, we reiterate that "[n]egligence principles are irrelevant where the 'no duty' rule applies." *Lin v. Spring Mountain Adventures, Inc.*, 2010 WL 5257648, at *7 (E.D. Pa. Dec. 23, 2010). Whether the no duty rule applies turns on whether Mr. Vu's particular injuries arose out of risks inherent in the sport of skiing – an issue that is not dependent on a plaintiff's subjective awareness of those specific risks.

---

[6] 200 F. Supp. 3d 471, 478 (M.D. Pa. 2016) (Mariani, J.).
[7] 749 A.2d 522, (Pa. Super. 2000).
[8] 483 Pa. 75, 85, 394 A.2d 546, 551 (1978).
[9] 719 A.2d 372, 376 (Pa. Super. Ct. 1998).

We now turn to the risks involved in Mr. Vu's accident. The facts reveal two circumstances that gave rise to Mr. Vu's injuries: (1) veering to avoid a collision with a snowboarder; and (2) skiing over the drop-off at the edge of the trail and into a pile of rocks. If these risks are inherent to the sport of downhill skiing, Plaintiffs' claims cannot stand.

We can easily conclude that the first risk is inherent and gives rise to no duty on behalf of Defendants. The Supreme Court of Pennsylvania has specifically determined that the risk of collision with another person on the slope is inherent to the sport of downhill skiing: "the risk of colliding with another skier is one of the common, frequent and expected risks 'inherent' in downhill skiing. Indeed, other skiers are as much a part of the risk in downhill skiing, if not more so, than the snow and ice, elevation, contour, speed and weather conditions." *Hughes*, 762 A.2d at 344. Likely in recognition of the clear case law, Plaintiffs do not argue in their brief in opposition to the Motion that avoiding a collision with a snowboarder is a risk that would give rise to a duty on behalf of Defendants. To the extent that Plaintiffs' claims of negligence are premised on Mr. Vu's avoidance of a collision with the snowboarder, those claims must fail.

Next, we consider whether skiing over the edge of the trail and encountering a three to four foot drop-off into a pile of rocks is an inherent risk of downhill

skiing. Plaintiffs frame this risk as the primary cause of Mr. Vu's injuries.[10]

"Simply put, the risk of ejectment from a ski trail due to a 3 to 4 foot drop off and striking one's head on rocks and/or boulders . . . is not an inherent, frequent, common, and expected risk of skiing." (Doc. 42, p. 11). All parties recognize that the drop-off was at the edge of the trail rather than a ditch or hole in the slope itself. Though Plaintiffs stress that Mr. Vu did not "willingly decide to ski off trail," the distinction is of no consequence. Plaintiffs describe the incident in terms of Mr. Vu being "ejected" from the trail due to the embankment, but it is illogical to argue that the existence of the drop-off itself would cause a skier to go over it. Whether Mr. Vu did so intentionally, accidentally, or as a means of avoiding a collision, the incontrovertible fact is that Mr. Vu did, ultimately, ski off of the three to four foot edge of the trail.

We hold that the risk of skiing off trail and suffering from the change of elevation between the trail and surrounding terrain is an inherent risk of downhill skiing. Mr. Vu was an experienced skier who was well aware of the risks of skiing off the designated slope; he testified repeatedly that he "would never ski off-trail." (Doc. 41, att. 1, p. 43). He had previously skied at Liberty Mountain on multiple occasions and could not remember ever complaining about the trail or trail

---

[10] ". . . the specific hazard of being ejected from the ski trail due to a steep 3 to 4 foot drop-off on that particular slope's trail edge." (Doc. 42, p. 8); "Even if Defendant could establish that having a 3 to 4 foot trail edge drop presents a danger inherent to the sport of skiing . . ." (*Id*. at p. 9); ". . . he was ejected from the trail when attempting to avoid a collision and was confronted with a 3 to 4 foot drop in elevation from the ski trail." (*Id*. at p. 11).

14

markings. (*Id*. at pp. 35-36). Additionally, Mr. Vu's daughter testified that she did not have any difficulty discerning the edge of the slope where her father went off trail the evening of the accident. (Doc. 41, att. 2, p. 14). It would be irrational for any court to hold that skiing off trail and encountering dangerous terrain is not an inherent risk of the sport of downhill skiing – ski slopes are marked and maintained in appreciation of this risk, and beginner and experienced skiers alike know to stay within the trail limits to avoid injury. Mr. Vu himself testified that he understood that he could run into trees, rocks, boulders, or snowmaking equipment if he skied off trail. (Doc. 37, att. 1, p. 71).

We struggled to find case law on point to support our holding because we believe it to be such a common sense and logical conclusion that does not require in-depth analysis. One case from the New York appellate court, however, was particularly analogous. In *Atwell v. State*, the plaintiff was skiing near the edge of the trail when he observed a "floundering" skier in his path. 645 N.Y.S.2d 658, 659 (1996). Plaintiff "instinctively reacted and turned without thinking" to avoid a collision and ended up skiing off trail and into a tree. *Id*. The court easily found that plaintiff's injuries were due to inherent risks of skiing. *Id*. at 650. "[F]rom claimant's own description of the accident, there can be no dispute that everything he encountered, including the skier he turned to avoid hitting, the berm at the edge of the trail referred to by claimant's expert and the tree with which he collided, are

15

all statutorily recognized as inherent dangers of skiing." The court noted that "[c]laimant chose to ski near the edge of the trail and there is nothing in the record to indicate that the location of the edge of the trail was not readily observable to him." *Id*. Similarly here, Mr. Vu was an experienced skier who chose to ski near the edge of the slope. He had a knee-jerk reaction to avoid a skier, and ended up veering off of the trail and suffering from the elevation change and his collision with rocks. Not only is there a lack of any evidence that the edge of the trail was difficult to discern, but Mr. Vu's daughter testified at length about how her father was close to the edge of the trail and specifically stated that she could observe the edge of the slope without difficulty. (Doc. 41, att. 2, p. 14).

We agree with the Supreme Court of New Hampshire, which simply held: "Even the most generous reading of the plaintiff's pleadings reveals the chief cause of his injuries to be an unenumerated, yet quintessential risk of skiing: that a skier might lose control and ski off the trail. By participating in the sport of skiing, a skier assumes this inherent risk and may not recover against a ski area operator for resulting injuries." *Nutbrown v. Mount Cranmore, Inc*., 140 N.H. 675, 684, 671 A.2d 548, 553 (1996).

## IV. CONCLUSION

For the foregoing reasons, the Motion shall be granted. A separate order shall issue in accordance with this memorandum.